**STEPHAN ZOURAS, LLC**
James B. Zouras (*Pro Hac Vice*)
jzouras@stephanzouras.com
Ryan F. Stephan (*Pro Hac Vice*)
rstephan@stephanzouras.com
Teresa M. Becvar (*Pro Hac Vice*)
tbecvar@stephanzouras.com
222 West Adams Street, Suite 2020
Chicago, Illinois 60606
Tel: (312) 233-1550
Fax: (312) 233-1560

David J. Cohen (*Pro Hac Vice*)
dcohen@stephanzouras.com
604 Spruce Street
Philadelphia, PA 19106
Tel: (215) 873-4836

(*Additional Counsel Continued on Next Page*)

**THIERMAN BUCK, LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH SILVA, individually, and on behalf of other members of the general public similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>FIRST TRANSIT, INC., and DOES 1 through 10, inclusive,<br><br>        Defendant(s). | Case No.: 4:20-cv-02285-JSW<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF THE PARTIES' FLSA SETTLEMENT INCLUDING ATTORNEYS' FEES, COSTS, AND A SERVICE AWARD**<br><br>DATE:    October 18, 2024<br>TIME:    9:00 a.m.<br>DEPT:    Courtroom 5, 2nd Floor<br>JUDGE:   Hon. Jeffrey S. White<br><br>COMPLAINT FILED:  April 3, 2020 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THIERMAN BUCK, LLP**
Mark R. Thierman, Esq., Cal. Bar No. 72913
mark@thiermanbuck.com
Joshua D. Buck, Esq., Cal. Bar No. 258325
josh@thiermanbuck.com
325 West Liberty Street
Reno, Nevada 89501
Tel: (775) 284-1500
Fax: (775) 703-5027

*Attorneys for Plaintiff and Members of the Collective Action*

**THIERMAN BUCK, LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

**PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF THE PARTIES' FLSA SETTLEMENT**
**Case No. 4:20-cv-02285-JSW**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THIERMAN BUCK, LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

## NOTICE OF MOTION AND UNOPPOSED MOTION

PLEASE TAKE NOTICE that on October 18, 2024 at 9:00 a.m., or as soon beforehand[1] or thereafter as the matter may be heard by the Honorable Judge Jeffrey S. White of the United States District Court for the Northern District of California, located at 1301 Clay Street, Courtroom 5 – 2nd Floor, Oakland, CA 94612, named Plaintiff Sarah Silva, individually, and on behalf of the members of the collective action, respectfully moves this Court to approve Plaintiffs' Settlement Agreement with Defendant First Transit, Inc. Counsel for Plaintiffs conferred with counsel for Defendant, and Defendant does not oppose this Motion.

This Motion is based on: this Notice of Motion and Plaintiffs' Unopposed Motion for Approval of The Parties' FLSA Settlement, Including Attorneys' Fees, Costs, and a Service Award; the following Memorandum of Points and Authorities; the Declaration of Teresa M. Becvar and the exhibits thereto; the pleadings and papers on file in this action; all matters of which the Court may take notice; and any other such evidence, briefing, or argument that may be presented to the Court at or before the time of hearing.

Dated: September 3, 2024

*/s/ Teresa M. Becvar*

Teresa M. Becvar

STEPHAN ZOURAS, LLC

Attorneys for Plaintiff Sarah Silva
and the Members of the Collective Action

---

[1] The Parties will waive the notice requirements if the Court is able to hear this matter earlier.

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................iv

TABLE OF AUTHORITIES ........................................................................................................ vi

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I.  STATEMENT OF RELEVANT FACTS ........................................................................... 1

    A.  Background and Procedural Posture. ...................................................................... 1

    B.  The Parties' Settlement Efforts. ............................................................................. 3

    C.  Relevant Terms of the Settlement Agreement. ...................................................... 4

II.  LEGAL STANDARD FOR SETTLEMENT APPROVAL ............................................... 5

III.  THE COURT SHOULD APPROVE THE PARTIES' PROPOSED SETTLEMENT ......... 6

    A.  The Proposed Settlement Resolves a *Bona Fide* Dispute. ..................................... 6

    B.  The Proposed Settlement Represents a Fair and Reasonable Resolution of Plaintiffs' Claims .................................................................................................. 9

        1.  Plaintiffs' Range of Possible Recovery ...................................................... 9

        2.  The Stage of the Proceedings and the Amount of Discovery Conducted ................................................................................................. 10

        3.  The Seriousness of the Litigation Risks Faced by the Parties ................. 11

        4.  The Scope of Any Release Provision in the Settlement Agreement .................................................................................................. 12

        5.  The Experience and Views of Counsel and Participating Plaintiffs ........ 13

        6.  The Possibility of Fraud or Collusion ...................................................... 13

    C.  The Requested Award of Attorneys' Fees and Litigation Costs Is Fair and Reasonable ........................................................................................................... 14

        1.  The FLSA Provides for the Recovery of Reasonable Attorneys' Fees by Successful Plaintiffs ................................................................... 14

        2.  Plaintiffs' Counsel Request a Reasonable Percentage of the Common Fund ........................................................................................ 14

        3.  A Lodestar Cross-Check Supports the Fee Award ................................... 16

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

4.    Plaintiffs' Counsel's Out-of-Pocket Expenses Are Reasonable .............. 17

D.    A Service Award to the Named Plaintiff Is Reasonable ...................................... 18

IV.    CONCLUSION........................................................................................................... 18

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

**PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF THE PARTIES' FLSA SETTLEMENT**
**Case No. 4:20-cv-02285-JSW**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THIERMAN BUCK, LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

# TABLE OF AUTHORITIES

## Cases

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) ......................................................................... 11

*Bratt v. County of Los Angeles*,
   912 F.2d 1066 (9th Cir. 1990) ............................................................................... 8

*Callari v. Blackman Plumbing Supply, Inc.*,
   No. CV 11-3655 (ADS) (AKT), 2020 WL 2771008 (E.D.N.Y. May 4, 2020) .................... 14

*Chalmers v. City of Los Angeles*,
   796 F.2d 1205 (9th Cir. 1986) ............................................................................. 16

*Cunningham v. Cty. of Los Angeles*,
   879 F.2d 481 (9th Cir. 1988) ............................................................................... 16

*Davis v. Cty. of Napa*,
   No. 21-cv-04603-JCS, 2023 WL 5723675 (N.D. Cal. Sept. 5, 2023) .............................. 6, 9

*Dixon v. Cushman & Wakefield W., Inc.*,
   No. 18-CV-05813-JSC, 2022 WL 1189883 (N.D. Cal. Apr. 21, 2022) ............................ 16

*Dunn v. Teachers Ins. & Annuity Ass'n of Am.*,
   No. 13-CV-05456-HSG, 2016 WL 153266 (N.D. Cal. Jan. 13, 2016) .............................. 5

*Fernandez v. Victoria Secret Stores, LLC*,
   No. CV 06-04149 MMM (SHx), 2008 WL 8150856 (C.D. Cal. July 21, 2008) .................. 16

*Fischel v. Equitable Life Assurance Soc'y of the U.S.*,
   307 F.3d 997 (9th Cir. 2002) ............................................................................... 15

*Fisher v. SD Protection, Inc.*,
   948 F.3d 593 (2d Cir. 2020) ................................................................................. 14

*Flores v. City of San Gabriel*,
   824 F.3d 890 (9th Cir. 2016) ................................................................................. 8

*Gutierrez v. Wells Fargo Bank, N.A.*,
   No. 07 CV 05923, 2015 WL 2438274 (N.D. Cal. May 21, 2015) ................................... 17

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................. 15

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

*Hernandez v. Dutton Ranch Corp.*,
  No. 19-CV-00817-EMC, 2021 WL 5053476 (N.D. Cal. Sept. 10, 2021) ...................... 15, 16

*In re Activision Securities Litigation*,
  723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................. 15

*In re Bluetooth Headset Prod. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ........................................................................... 15

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................. 18

*Jones v. Agilysys, Inc.*,
  No. C 12-03516 SBA, 2014 WL 2090034 (N.D. Cal. May 19, 2014) ................................. 18

*Kelly v. Wengler*,
  822 F.3d 1085 (9th Cir. 2016) .......................................................................... 16

*Larsen v. Trader Joe's Co.*,
  No. 11-cv-0518-WHO, 2014 WL 3404531 (N.D. Cal. Jul. 11, 2014) ......................... 13

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ......................................................................... 11

*Local 246 Util. Workers Union of Am. v. S. California Edison Co.*,
  83 F.3d 292 (9th Cir. 1996) ............................................................................... 8

*Lynn's Food Stores, Inc. v. United States*,
  679 F.2d 1350 (11th Cir. 1982) ...................................................................... 5, 7

*McKeen-Chaplin v. Franklin Am. Mortg. Co.*,
  No. C 10-5243 SBA, 2012 WL 6629608 (N.D. Cal. Dec. 19, 2012) ...................................... 6

*Monplaisir v. Integrated Tech Grp., LLC*,
  No. C 19-01484 WHA, 2022 WL 1500551 (N.D. Cal. May 12, 2022)............................ 15

*Moreno v. Regions Bank*,
  729 F. Supp. 2d 1346 (M.D. Fla. 2010)............................................................. 12

*Myers v. Hertz*,
  624 F.3d 537 (2d Cir. 2010)............................................................................... 7

*Nen Thio v. Genji, LLC*,
  14 F. Supp. 3d 1324 (N.D. Cal. 2014) ................................................................. 7

**PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF THE PARTIES' FLSA SETTLEMENT**
**Case No. 4:20-cv-02285-JSW**

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

*Newhouse v. Robert's Ilima Tours, Inc.*,
    708 F.2d 436 (9th Cir. 1983) ........................................................................ 14

*Norris v. Mazzola*,
    No. 15-CV-04962-JSC, 2017 WL 6493091 (N.D. Cal. Dec. 19, 2017) ............................ 15

*Novoselac v. Vuzem*,
    No. 21-CV-08654-BLF, 2023 WL 3899011 (N.D. Cal. June 7, 2023) .............................. 16

*Ontiveros v. Zamora*,
    303 F.R.D. 356 (E.D. Cal. 2014) .................................................................... 10

*Parks v. Eastwood Ins. Servs., Inc.*,
    No. SA CV 02-507-GLT(MLGx), 2005 WL 6007833 (C.D. Cal. June 28, 2005)................ 14

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................................ 18

*Selk v. Pioneers Mem'l Healthcare Dist.*,
    159 F. Supp. 3d 1164 (S.D. Cal. 2016) ........................................................ 5, 6, 16

*Slezak v. City of Palo Alto*,
    No. 16-cv-03224-LHK, 2017 WL 2688224 (N.D. Cal. June 22, 2017) ................ 6, 9, 12, 13

*Superior Consulting Servs., Inc. v. Steeves-Kiss*,
    No. 17 CV 6059, 2018 WL 2183295 (N.D. Cal. May 11, 2018)................................ 17

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    896 F.2d 403 (9th Cir. 1990) ........................................................................ 16

*Vasquez v. Coast Valley Roofing, Inc.*,
    266 F.R.D. 482 (E.D. Cal. 2010) .................................................................... 15

*Villegas v. J.P. Morgan Chase & Co.*,
    No. C 09–0261 SBA, 2012 WL 3542187 (N.D. Cal. Aug. 14, 2012) ................................ 18

*Welch v. Metro. Life Ins. Co.*,
    480 F. 3d 942 (9th Cir. 2007) ........................................................................ 16

**Statutes, Regulations, and Other Authorities**

29 C.F.R. § 785.11 ............................................................................................7

California Business & Professions Code ................................................................... 2

California Labor Code ...................................................................................... 2

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*................................................ 1, 2, 8, 14

*Newberg on Class Actions* (4th ed. 2008).................................................................. 15

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

**PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF THE PARTIES' FLSA SETTLEMENT**
**Case No. 4:20-cv-02285-JSW**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com  www.thiermanbuck.com

## MEMORANDUM OF POINTS AND AUTHORITIES

Sarah Silva ("Plaintiff"), and the 861 Opt-In Plaintiffs who were employed as First Transit Paratransit Drivers in 26 states nationwide ("Opt-In Plaintiffs") (collectively, the "Plaintiffs"), move the Court for an Order approving the settlement reached in this action with Defendant First Transit, Inc. ("First Transit") (together with Plaintiffs, the "Parties") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

The Parties negotiated a settlement of this *bona fide* dispute following four years of motion practice, the exchange of substantial discovery to inform the Parties' damage calculations, extensive arm's-length negotiations conducted by counsel well-versed in wage and hour litigation, and a mediation overseen by Hunter R. Hughes, Esq., a well-respected private mediator experienced in the resolution of class and collective wage and hour claims.

Plaintiffs submit the terms of the Parties' proposed Settlement Agreement and Release (the "Agreement") are fair, reasonable, and adequate, particularly considering the existence of many disputed issues of fact and law with respect to liability, damages, and the propriety of collective treatment, and additional uncertainty as to whether Plaintiffs would obtain a judgment in their favor, along with the risks of trial and possible appeals. *See generally* Settlement Agreement and Release (Exhibit 1 to the Declaration of Teresa M. Becvar ("Becvar Decl.")).

## I.    STATEMENT OF RELEVANT FACTS

### A.    Background and Procedural Posture

Plaintiff filed this action on April 3, 2020 to redress First Transit's policies and practices alleged to deny overtime wages to Paratransit Drivers for work they performed during "split-shift" schedules, which are daily, 8-hour shifts divided between morning and afternoon shifts and separated by a one- to four-hour "break." (ECF No. 1.) Specifically, Plaintiff alleged that First Transit required Drivers to return to their depots during split-shift breaks to perform work-related activities like completing paperwork, checking their schedules, trying to schedule additional rides, planning their routes, talking to managers and supervisors, cleaning and maintaining their vehicles and cleaning the depot. (*Id.*) Further, First Transit took Drivers "off-the-clock" during

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

their split-shift breaks and did not pay any wages for the split-shift break work they allege they performed. (*Id.*) Plaintiff claims these practices violate the FLSA by denying overtime premium wages to Drivers for scheduled work they performed with First Transit's knowledge and from which First Transit receives a substantial benefit. (*Id.*)[2]

On May 24, 2021, Plaintiff filed a Motion for Circulation of Notice Pursuant to 29 U.S.C. § 216(b), seeking leave to disseminate notice to a putative FLSA collective defined to include: "All individuals who are currently employed or have been employed by First Transit, Inc. as a full-time, hourly Paratransit Driver and who have been assigned a split-shift schedule during the maximum limitations period." (ECF No. 43.) In support of her Motion, Plaintiff introduced sworn declarations from three other First Transit Paratransit Drivers describing their personal experiences across years of employment in three different states, their familiarity with First Transit's policies and practices, their interactions with managers responsible for implementing First Transit's hours of work, overtime, time reporting, and payroll policies, and their discussions with members of the putative collective who claimed the same problems with unpaid work during split-shift breaks. (ECF Nos. 43-4 to 43-6.)

On June 7, 2021, First Transit opposed Plaintiff's Motion, principally claiming Plaintiff could not demonstrate a uniform unlawful policy or practice requiring split-shift Paratransit Drivers to perform work in the split time between two shifts, given First Transit's nationwide policy that no driver should perform any work off-the-clock. (ECF No. 44.) On June 21, 2021, Plaintiff filed a reply in support of her Motion that answered First Transit's arguments and explained why Plaintiff's evidence more than adequately supported conditional certification and dissemination of notice to the putative collective. (ECF No. 48.) On July 7, 2021, the Court granted the Motion and authorized Plaintiff to disseminate notice to the putative collective. (ECF

---

[2] Plaintiff also brought class claims for violations of the California Labor Code, §§ 201–203, 226.7, 510, 1194, and 1194.2, and unfair business practices in violation of the California Business & Professions Code, § 17200, *et seq.* On March 1, 2021, the Court dismissed all of Plaintiff's California state law claims without prejudice under the first-to-file rule. (ECF No. 37.) Plaintiff's cause of action for failure to pay overtime in violation of the FLSA, 29 U.S.C. § 207, is the only cause of action currently at issue.

No. 50.) On October 25, 2021, Plaintiff disseminated FLSA Notice and, in response, received signed opt-in forms from 861 Paratransit Drivers from 118 work locations in 26 states nationwide. (Becvar Decl. ¶ 3.)

Thereafter, the Parties conducted discovery. Plaintiff served interrogatories and document requests on First Transit relating to class-wide final FLSA certification, merits, and damages issues. (*Id.* ¶ 4.) First Transit responded to that discovery and produced documents and data, including timekeeping data for Plaintiff and each of the Opt-In Plaintiffs. (*Id.*) As agreed by the Parties, First Transit served four interrogatories and five document requests on Plaintiff Sarah Silva and 50 randomly selected Opt-In Plaintiffs who worked for First Transit for at least 130 days, with no more than three Opt-In Plaintiffs selected from a single work location. (*Id.*) Plaintiff Sarah Silva and 11 Opt-In Plaintiffs answered these requests. (*Id.*) In addition, the Parties participated in an additional exchange of payroll data to further inform their mediation statements, damage calculations, and settlement negotiations. (*Id.*)

**B.    The Parties' Settlement Efforts**

On April 12, 2024, after conferring and retaining mediator Hunter R. Hughes, Esq., to preside over private mediation, the Parties filed a Stipulation to Stay All Case Deadlines to permit them "to pursue settlement discussions informed by an exchange of thorough settlement analyses and proposals rather than proceeding with litigation on decertification, damages, and merits issues." (ECF No. 84.) The Court entered the Stipulation, and the Parties engaged in a full-day mediation on July 10, 2024. (Becvar Decl. ¶ 10.)

Having mediated their dispute and engaged in subsequent discussions, the Parties compromised and agreed in principle to the material terms of an arm's-length negotiated settlement that would resolve the disputed issues relating to the calculation and payment of overtime compensation under the FLSA. (*Id.* ¶ 12.) Plaintiffs now seek this Court's approval of a proposed FLSA settlement to resolve FLSA claims belonging to the named Plaintiff and the 861 Opt-In Plaintiffs.

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

### C.     Relevant Terms of the Settlement Agreement

The Parties, with the assistance of Mr. Hughes, agreed to settle this matter for a total sum of $1,450,000.00. This settlement amount includes all amounts to be paid by First Transit to Plaintiffs, attorneys' fees and litigation costs inclusive, to resolve this matter.[3] As outlined in their Settlement Agreement, the Parties propose to distribute this sum as follows:

a.   $452,500.00 to Plaintiffs, less necessary taxes and withholdings, representing alleged wage-based damages, made payable to each Plaintiff and documented on IRS W-2 Forms. The Plaintiff and each Opt-In Plaintiff's *pro rata* settlement share will be determined by the Settlement Administrator using the formula set forth in the Settlement Agreement based on their most recent pay rates and number of weeks they worked during the covered period.[4]

b.   $452,500.00 to Plaintiffs (individual amounts to be determined as set forth above), representing alleged non-wage liquidated damages, made payable to Plaintiff and each Opt-In Plaintiff and documented on IRS 1099 Forms;

c.   $5,000.00 as a Service Payment to Named Plaintiff Sarah Silva in recognition of services rendered to the members of the collective action and documented on a 1099 Form;

d.   $36,000.00 in reimbursement of litigation costs to Stephan Zouras, LLC, documented on an IRS 1099 Form;

e.   $4,000.00 in settlement administration costs to Simpluris; and

---

[3] First Transit will separately pay the employer's share of tax withholdings on the portion of the individual settlement payments to Plaintiffs characterized as wages. (Becvar Decl., Ex. 1 (Settlement Agreement) at ¶ 4.)

[4] At the time of filing this Motion, First Transit is still compiling the updated list of Plaintiffs' work week totals and most recent pay rates (*i.e.* Exhibit A to the Settlement Agreement) that will be used to apply the allocation formula. In order to complete Exhibit A, First Transit is obtaining current payroll data from First Transit's current owner, Transdev Services, Inc.

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

1    f.    $500,000.00 in attorneys' fees to Stephan Zouras, LLC, documented on an IRS

2         1099 Form.

3    (Becvar Decl., Ex. 1 (Settlement Agreement) at ¶ 1.)

4         The $905,000.00 allocated to Plaintiffs' damage payments represents a fair and reasonable

5    result because of the uncertainty of determining whether First Transit violated the FLSA and

6    whether the collective would be decertified because of individual factual differences between

7    their claims and work environments, the difficulty of proving the unpaid overtime Plaintiffs

8    worked, and the risks, costs, and delays associated with continuing this litigation on a contested

9    basis through trial and any appeals.

10        Upon approval of the settlement, Plaintiffs will release First Transit from:

11            all applicable claims for unpaid wages, overtime or other
              compensation, fees/costs, liquidated damages, penalties, and all
12            other relief premised on the failure to pay for time worked while off-
              the-clock during the 'split' on split shifts under the Fair Labor
13            Standards Act and all other state and local wage/hour and wage
              payment laws and common law theories arising or accruing prior to
14            the date of settlement approval against First Transit.

15   *See* Becvar Decl., Ex. 1 (Settlement Agreement) at ¶ 8(a).

16   ## II.    LEGAL STANDARD FOR SETTLEMENT APPROVAL

17        Settlement of collective action claims under the FLSA requires court approval. *Selk v.*

18   *Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016). The Ninth Circuit

19   has not established criteria for district courts to consider in determining whether a FLSA

20   settlement should be approved. *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-

21   HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). However, in this circuit, district courts

22   normally apply a widely-used standard adopted by the Eleventh Circuit, looking to whether the

23   settlement is a fair and reasonable resolution of a *bona fide* dispute. *Id.*; *see also Lynn's Food*

24   *Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Selk*, 159 F. Supp. 3d at

25   1172. "A *bona fide* dispute exists when there are legitimate questions about the existence and

1    extent of Defendant's FLSA liability." *Selk*, 159 F. Supp. 3d at 1172 (internal quotation marks

2    and citation omitted).

3         To determine whether a FLSA settlement is fair and reasonable, courts evaluate the

4    "totality of the circumstances" within the context of the purposes of the FLSA. *Slezak v. City of*

5    *Palo Alto*, No. 16-cv-03224-LHK, 2017 WL 2688224, at *3 (N.D. Cal. June 22, 2017) (citation

6    omitted). Courts consider the following factors:

> (1) the plaintiff's range of possible recovery; (2) the stage of
> proceedings and amount of discovery completed; (3) the seriousness
> of the litigation risks faced by the parties; (4) the scope of any
> release provision in the settlement agreement; (5) the experience and
> views of counsel and the opinion of participating plaintiffs; and (6)
> the possibility of fraud or collusion.

11   *Davis v. Cty. of Napa*, No. 21-cv-04603-JCS, 2023 WL 5723675, at *3 (N.D. Cal. Sept. 5, 2023)

12   (quoting *Selk*, 159 F. Supp. 3d at 1173).

13        With this approach, a "district court must ultimately be satisfied that the settlement's

14   overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Selk*, 159 F. Supp.

15   3d at 1173. Settlements that reflect a fair and reasonable compromise of issues that are actually

16   in dispute may be approved to promote the efficiency of encouraging settlement of litigation.

17   *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *2

18   (N.D. Cal. Dec. 19, 2012).

19

20   ## III.    THE COURT SHOULD APPROVE THE PARTIES' PROPOSED SETTLEMENT

21        To approve the Parties' settlement, the Court must find that (1) the case involves a *bona*

22   *fide* dispute, (2) the proposed settlement agreement is fair and reasonable, (3) the award of

23   attorneys' fees and litigation costs are reasonable, and (4) a service award to the Named Plaintiff

24   is warranted. The Parties' proposed settlement satisfies all of these requirements.

25   ### A.    The Proposed Settlement Resolves a *Bona Fide* Dispute

26        The proposed Settlement Agreement resolves several *bona fide* disputes between the

27   Parties regarding legitimate, legally unresolved questions over the existence and extent of First

28   Transit's liability. "If a settlement in an employee FLSA suit does reflect a reasonable

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

**PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF THE PARTIES' FLSA SETTLEMENT**
**Case No. 4:20-cv-02285-JSW**

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute[,] . . . the district court [may] approve the settlement in order to promote the policy of encouraging settlement of litigation." *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014); *Lynn's Food Stores*, 679 F.2d at 1353 n.8 (requiring "settlement of a *bona fide* dispute between the Parties with respect to coverage or amount due under the [FLSA]"). The purpose of this requirement is to ensure that an employee does not waive claims for wages, overtime compensation, or liquidated damages when no actual dispute exists as to the employee's entitlement to such remedies under the FLSA. *Lynn's Food Stores*, 679 F.2d at 1353–54.

Here, the Parties have a *bona fide* dispute regarding liability and damages. Plaintiffs allege First Transit takes Paratransit Drivers off-the-clock during their split-shift breaks and does not pay any wages for a variety of work activities they are required to perform. (Becvar Decl. ¶ 6.) Based on sworn declarations and interrogatory answers from Plaintiff and thirteen Opt-In Plaintiffs, the average of Plaintiffs' claims for time spent on such work activities performed during split-shift breaks is approximately 5.6 hours per week. (*Id.*)

First Transit denies its policies and systems violate the FLSA. (*Id.* ¶ 7.) It contends Plaintiffs cannot meet their burden to prove it has a common policy or practice of requiring split-shift Paratransit Drivers to perform work off-the-clock because First Transit's only nationwide policy is to *prohibit* off-the-clock work. *See Myers v. Hertz*, 624 F.3d 537, 555 (2d Cir. 2010) (to be "similarly situated" under the FLSA, a plaintiff must show that she and collective members "together were victims of a common policy or plan that violated the law"). Moreover, First Transit contends each of its facilities has different practices, processes, routes, scheduling, and contracts for Paratransit Drivers. (Becvar Decl. ¶ 7.) For instance, First Transit maintains that many work locations throughout the nation allow Paratransit Drivers who are assigned a split shift to park their buses at home or at another location of their choosing and use their split-shift break time as they please. (*Id.*) Accordingly, First Transit contends Plaintiffs cannot prove it uniformly suffered or permitted off-the-clock split shift work for Opt-In Plaintiffs nationwide. *See* 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time."). Additionally, First Transit

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

strongly contests the amount of time claimed by Plaintiffs and contends any time spent by Plaintiffs performing work activities during their split-shift breaks is *de minimis*. (Becvar Decl. ¶ 8.)

The Parties also dispute whether the Plaintiffs are entitled to liquidated damages. Section 216(b) of the FLSA provides that: "an employer who violates the Act shall be liable for unpaid overtime compensation plus an additional equal amount as liquidated damages." *Local 246 Util. Workers Union of Am. v. S. California Edison Co.*, 83 F.3d 292, 297 (9th Cir. 1996). Liquidated damages are automatically applied. 29 U.S.C. § 260. However, liquidated damages may be avoided if the employer can establish "subjective and objective good faith in its violation of the FLSA." *Id.* The key question is whether the employer "in acting or omitting to act as he did . . . acted as a reasonably prudent man would have acted under the same or similar circumstances. . . ." *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1071 (9th Cir. 1990).

Plaintiffs contend First Transit does not have a good faith defense to liquidated damages and would be found to have willfully violated the FLSA. (Becvar Decl. ¶ 6.) In particular, Plaintiffs claim that because First Transit failed to track Paratransit Drivers' split-shift work despite its clear ability to do so, it cannot prove good faith compliance with its overtime obligations, and, therefore, Plaintiffs will be entitled to liquidated damages. (*Id.*) First Transit, on the other hand, disputes these allegations.[5] It maintains that Plaintiffs – who are required to self-report overtime and are prohibited from working off-the-clock – did not report their alleged split-shift activities as overtime until the filing of this lawsuit. First Transit therefore posits these facts show it has acted in good faith, thus mitigating against an award of liquidated damages.

---

[5] The Parties have agreed to apply a three-year statute of limitations for purposes of settlement. Generally, the FLSA has a two-year statute of limitations. 29 U.S.C. § 255(a). However, if the violation of the FLSA is willful, the statute of limitations extends to three years. *Id.* The burden is on the employee(s) to show a willful violation. The issue of willfulness involves a similar inquiry as good faith. "An employer's violation of the FLSA is 'willful' when it is on notice of its FLSA requirements, yet takes no affirmative action to assure compliance with them." *Flores v. City of San Gabriel*, 824 F.3d 890, 906 (9th Cir. 2016) (internal quotation omitted).

**PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF THE PARTIES' FLSA SETTLEMENT**
**Case No. 4:20-cv-02285-JSW**

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

Based on all the foregoing considerations, Plaintiffs submit that the Settlement Agreement resolves several *bona fide* disputes that necessarily affect the existence and extent of First Transit's liability and substantial risks on both sides associated with continuing this litigation.

**B.    The Proposed Settlement Represents a Fair and Reasonable Resolution of Plaintiffs' Claims**

To determine whether an FLSA settlement is fair and reasonable, courts in the Ninth Circuit evaluate the "totality of the circumstances," considering the six relevant factors set forth above. *Slezak*, 2017 WL 2688224 at *3; *see also Davis*, 2023 WL 5723675 at *3.

Here, each of the relevant factors supports the conclusion that the proposed settlement is fair and reasonable. The proposed distribution to Plaintiffs constitutes a fair and reasonable compromise of their disputed claims, the release is appropriately tailored to the claims that were actually litigated, counsel and the named Plaintiff support the settlement as fair and reasonable, and the settlement was reached as the result of arms-length negotiations.

**1.    Plaintiffs' Range of Possible Recovery**

The proposed $905,000.00 distribution to Plaintiff and the 861 Opt-In Plaintiffs represents a substantial percentage of what they would be able to recover in wages and liquidated damages if they were fully successful in proving up their claims.

To determine potential damages, Plaintiffs' counsel consulted the sworn declarations and interrogatory responses from Plaintiff and thirteen Opt-In Plaintiffs, who claim to have performed from fifteen minutes to five hours unpaid work during split-shift breaks between one and five times per week, averaging 5.6 hours of unpaid work per week. (Becvar Decl. ¶ 8.) Plaintiffs' counsel then added these estimated unrecorded hours per work week to each Plaintiff's recorded hours, as shown in payroll records produced by First Transit for a three-year limitations period, to calculate the unpaid overtime wages due for each pay period. (*Id.*)

First Transit has steadfastly argued throughout the action that, if any liability is warranted, the overtime worked off-the-clock is minimal. Approaching the mediation, based on its view of the relevant evidence, First Transit placed a *de minimis* value on Plaintiffs' claims and their ability

**PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF THE PARTIES' FLSA SETTLEMENT
Case No. 4:20-cv-02285-JSW**

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

to maintain a nationwide collective through final certification. (*Id.*) During the mediation, defense counsel presented multiple arguments against the cohesiveness and merit of Plaintiffs' claims, including that: many Paratransit Drivers were permitted to park their buses at home or at another location of their choosing during their split-shift breaks and use their time as they pleased; Paratransit Drivers routinely engaged in personal (*i.e.*, non-work-related) activities during the time they were claiming to be "at work" for purposes of their claims; each work location instituted different work policies with regard to split-shift schedules; only 60% of shifts were split shifts; few Opt-In Plaintiffs responded to written discovery; and Plaintiffs did not regularly work over 40 hours per week. (*Id.* ¶ 11) As a result, First Transit was confident that Plaintiffs' entitlement to unpaid overtime wages would require an individual analysis. (*Id.*) Further, absent settlement, First Transit can still raise all these arguments to challenge Plaintiffs' entitlement to proceed on a representative basis and the merit of their claims.

Informed by all the information exchanged between the Parties, Plaintiffs' damage calculations reasonably valued the claims of Plaintiff and 861 Opt-In Plaintiffs at $2,315,194.14 for 2.0 hours of uncompensated work during split-shift breaks each week. (Becvar Decl. ¶ 13.) The $905,000.00 value of the Parties' proposed settlement, exclusive of attorneys' fees and litigation costs, represents 39% of this calculation, and will provide an average settlement payment of approximately $1,050.00 per Plaintiff. (*Id.*) Considering the substantial risks Plaintiffs would face in maintaining collective action status through final certification, surviving summary judgment, and prevailing at trial, they submit this recovery represents more than a fair result. Accordingly, this factor weighs in favor of settlement.

### 2. The Stage of the Proceedings and the Amount of Discovery Conducted

Courts assess the stage of the proceedings and the amount of discovery completed to ensure that parties have an adequate appreciation of the merits of the case before reaching a settlement. *See Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("A settlement that occurs in an advanced stage of the proceedings indicates that the parties carefully investigated the

claims before reaching a resolution."). If the parties have "sufficient information to make an informed decision about settlement," this factor will weigh in favor of approval. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Here, the Parties had sufficient information to make informed decisions about their proposed settlement. (Becvar Decl. ¶ 4.) The Parties engaged in both formal and informal discovery. (*Id.*) Plaintiff served interrogatories and document requests on First Transit relating to class-wide final FLSA certification, merits, and damages issues. (*Id.*) First Transit responded to that discovery and produced documents and data, including timekeeping data for Plaintiff and each of the Opt-In Plaintiffs. (*Id.*) As agreed by the Parties, First Transit served four interrogatories and five document requests on Plaintiff Sarah Silva and 50 randomly selected Opt-In Plaintiffs who worked for First Transit for at least 130 days, with no more than three Opt-In Plaintiffs selected from a single work location. (*Id.*) Plaintiff Sarah Silva and 11 Opt-In Plaintiffs responded. (*Id*) In addition, the Parties participated in an additional exchange of payroll data to further inform their mediation statements, damage calculations, and settlement negotiations. (*Id.*)

Plaintiffs requested and received the necessary evidence to form an adequate appreciation of the merits of the case before reaching the proposed settlement. (*Id.* ¶ 5.) First Transit produced records related to hours worked by Plaintiffs and compensation paid, as well as its policies and practices with regard to timekeeping and compensation. (*Id.*) These efforts demonstrate that the Parties' settlement negotiations were adequately informed.

### 3.   The Seriousness of the Litigation Risks Faced by the Parties

Settlement is favored where "there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015). As discussed in greater detail above, the Settlement Agreement provides Plaintiffs with substantial relief given the risks of continued litigation.

In this case, Plaintiffs challenge whether First Transit has adequately tracked and paid its Paratransit Drivers for all the work they claim to have performed during split-shift breaks. Not only does First Transit deny these allegations, but it also denies that Plaintiffs' claims can be

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

collectively litigated given claimed differences in the policies, procedures, and practices applied across all 118 of the work locations (in 26 different states) involved in this action. As a result, the Parties have a good-faith basis to disagree, both about whether Plaintiffs' claims can proceed on a collective basis, and also about whether these claims will prevail on the merits.

Given the significant disparity between their positions and the amount of unpaid wages in dispute, both Parties face substantial risk and uncertainty from continued litigation, including significant expenses associated with prosecuting or defending these claims and any appeals, and potential disruption to their lives and continued business operations. Accordingly, without conceding their opponent's conclusions, both Parties agree that proceeding with the settlement set forth in their Settlement Agreement is in their best interests. This situation necessarily demonstrates that the Parties' proposed settlement is fair and reasonable considering the probability of Plaintiffs' success on the merits.

### 4.     The Scope of Any Release Provision in the Settlement Agreement

"A FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself." *Slezak*, 2017 WL 2688224 at *5. Expansive releases of claims would allow employers to unfairly extract valuable concessions from employees using wages that they are guaranteed by statute. *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010) ("An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled.").

Here, the release extends to all claims "for unpaid wages, overtime or other compensation, fees/costs, liquidated damages, penalties, and all other relief premised on the failure to pay for time worked while off-the-clock during the 'split' on split shifts under the Fair Labor Standards Act and all other state and local wage/hour and wage payment laws and common law theories arising or accruing prior to the date of settlement approval." (Becvar Decl., Ex. 1 (Settlement Agreement) at ¶ 8(a).) Such a narrowly-tailored and carefully-drawn release favors settlement approval.

THERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thermanbuck.com www.thermanbuck.com

### 5.    The Experience and Views of Counsel and Participating Plaintiffs

In determining whether the Parties' proposed settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's Co.*, No. 11-cv-0518-WHO, 2014 WL 3404531, at *5 (N.D. Cal. Jul. 11, 2014). Here, Plaintiffs' counsel assert that the terms of the Settlement Agreement are fair and reasonable, and that the settlement amount is within the range that Plaintiffs could expect to recover if this matter were to proceed to trial. (Becvar Decl. ¶ 14.) Plaintiffs' counsel have years of experience in wage and hour actions in both state and federal court, including FLSA actions in a variety of venues nationwide, suggesting they have the experience and skill to make a reliable evaluation of the merit and value of the Plaintiffs' claims and their chances of success. (*Id.* ¶¶ 15, 17–19.) Further, the "opinion of participating plaintiffs," *Selk*, 159 F. Supp. 3d at 1173, also weighs in favor of approval here. Although the Opt-In Plaintiffs will be informed of their individual shares in the settlement after court approval, Named Plaintiff Sarah Silva enthusiastically supports the settlement. (Becvar Decl. ¶ 14.) As a result, these considerations favor settlement approval.

### 6.    The Possibility of Fraud or Collusion

At all times, settlement negotiations have been at arms-length and there has been no fraud or collusion. "The likelihood of fraud or collusion is low . . . [when] the Settlement was reached through arm's-length negotiations, facilitated by an impartial mediator." *Slezak*, 2017 WL 2688224 at *5. Here, the Parties are represented by experienced wage and hour and class action counsel and negotiated this settlement with Mr. Hughes' direct involvement, which ensured both that the Parties' negotiations took place at arm's-length and that the settlement's material terms do not involve fraud or collusion. (Becvar Decl. ¶¶ 10, 14–15, 17–19.) As such, any possibility of fraud or collusion in this proposed settlement is minimal, which favors approval.

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

### C. The Requested Award of Attorneys' Fees and Litigation Costs Is Fair and Reasonable

Plaintiffs' counsel seek an award of $500,000.00 in attorney's fees and $36,000.00 in actual litigation costs expended. The $500,000.00 in fees requested represents approximately 34.5% of the total $1,450,000.00 settlement fund.

#### 1. The FLSA Provides for the Recovery of Reasonable Attorneys' Fees by Successful Plaintiffs

Prevailing plaintiffs are entitled to reasonable attorneys' fees and litigation costs under the FLSA. *See* 29 U.S.C. § 216(b); *Newhouse v. Robert's Ilima Tours, Inc.*, 708 F.2d 436, 441 (9th Cir. 1983). The FLSA encourages the recovery of all reasonable fees in accord with the policy in favor of full recovery of fees for successful plaintiffs in FLSA litigation. In fact, the Second Circuit recently rejected the notion that a fee may be reduced "merely because it would be disproportionate to the financial interest at stake in the litigation." *Callari v. Blackman Plumbing Supply, Inc.*, No. CV 11-3655 (ADS) (AKT), 2020 WL 2771008, at *9 (E.D.N.Y. May 4, 2020) (citing *Fisher v. SD Protection, Inc.*, 948 F.3d 593, 603–04 (2d Cir. 2020)). The *Fisher* court reasoned that a proportionality rule would be inconsistent with the remedial goals of the FLSA, which has been deemed a "uniquely protective statute," and by implementing a percentage cap on attorneys' fees in FLSA actions, district courts impede Congress's goals by discouraging plaintiffs' attorneys from taking on FLSA cases where the potential damages are low and the risk of protected litigation is high. 948 F.3d at 602; *see also Parks v. Eastwood Ins. Servs., Inc*., No. SA CV 02-507-GLT(MLGx), 2005 WL 6007833, at *1 (C.D. Cal. June 28, 2005) (awarding $2,080,415.00 in fees and costs after parties settled FLSA and state law claims for $1,200,000.00), *aff'd in part, rev'd in part and remanded*, 240 F. App'x 172 (9th Cir. 2007).

#### 2. Plaintiffs' Counsel Request a Reasonable Percentage of the Common Fund

Under Ninth Circuit precedent, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method for awarding attorneys' fees. *Hernandez v. Dutton Ranch Corp.*, No. 19-CV-00817-EMC, 2021 WL 5053476, at *5 (N.D. Cal.

Sept. 10, 2021) (citing *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011) and *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)). Indeed, the percentage approach is often preferable to the lodestar because: (1) it aligns the interests of counsel and Plaintiffs; (2) it encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; and (3) it reduces the demands on judicial resources. *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1374–77, 1378–79 (N.D. Cal. 1989) (collecting authority and describing benefits of the percentage method over the lodestar method). Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

Historically, courts have awarded percentage fees in the range of 20% to 50% of the common fund, depending on the circumstances of the case. *Newberg on Class Actions* § 14:6 (4th ed. 2008). However, for district courts applying the percentage-of-the-fund method, the Ninth Circuit uses 25 percent of the fund as the presumptively reasonable "benchmark" for awarding fees. *Bluetooth*, 654 F.3d at 941–42. "The benchmark percentage should be adjusted . . . when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Monplaisir v. Integrated Tech Grp., LLC*, No. C 19-01484 WHA, 2022 WL 1500551, at *4 (N.D. Cal. May 12, 2022) (quotation omitted). "[The] exact percentage [awarded] varies depending on the facts of the case, and in most common fund cases, the award exceeds that benchmark." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010).

Plaintiffs' counsel's requested fee of 34.5% of the common fund is fair and reasonable given the favorable result obtained for the Plaintiffs under the Settlement Agreement, which is the most important factor in determining the reasonableness of a fee award. *See, e.g.*, *Norris v. Mazzola*, No. 15-CV-04962-JSC, 2017 WL 6493091, at *13 (N.D. Cal. Dec. 19, 2017) (finding that fee award was reasonable even though it was approximately 44% of the total settlement fund where the amount was lower than the actual lodestar and in light of the overall result); *Selk*, 159

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

F. Supp. 3d at 1180 (approving attorneys' fees and costs award of $22,000 in a settlement of a FLSA collective action, which was 45% of the total settlement amount); *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 WL 8150856 (C.D. Cal. July 21, 2008) (awarding 34% of the common fund in attorneys' fees in a wage and hour class action settlement). The requested fees are fair compensation for undertaking complex, risky, expensive, and time-consuming litigation solely on a contingency basis.

### 3.    A Lodestar Cross-Check Supports the Fee Award

Where the Court applies common fund method for awarding attorneys' fees and litigation costs, it may cross-check the reasonableness of the fee request against counsel's lodestar. *See, e.g.*, *Hernandez v. Dutton Ranch Corp.*, No. 19-CV-00817-EMC, 2021 WL 5053476, at *4 (N.D. Cal. Sept. 10, 2021). To calculate the lodestar, the court "multipl[ies] the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Welch v. Metro. Life Ins. Co.*, 480 F. 3d 942, 945 (9th Cir. 2007). The lodestar figure is "presumptively reasonable." *Cunningham v. Cty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988). Here, Plaintiffs' counsel expended 819.3 hours at rates between $275.00 and $950.00, for a lodestar of $521,070.00. (Becvar Decl. ¶¶ 17–19, 23.)

The rates claimed by Plaintiffs' counsel are reasonable because they are consistent with the market. An attorney's hourly rate is reasonable if it is in line with (1) those of attorneys who have "comparable skill, experience and reputation," *Novoselac v. Vuzem*, No. 21-CV-08654-BLF, 2023 WL 3899011, at *11 (N.D. Cal. June 7, 2023) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986)), and (2) "prevailing market rates in the relevant community." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *Dixon v. Cushman & Wakefield W., Inc.*, No. 18-CV-05813-JSC, 2022 WL 1189883, at *11 (N.D. Cal. Apr. 21, 2022) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)).

Plaintiffs' counsel's rates are consistent with the market for attorneys with comparable experience in this district. Plaintiffs' counsel are experienced wage and hour attorneys, who have secured significant victories. (Becvar Decl. ¶¶ 15–19.) "[D]istrict courts in Northern California have found that rates of $475–$975 per hour for partners and $300–$490 per hour for associates are reasonable." *Superior Consulting Servs., Inc. v. Steeves-Kiss*, No. 17 CV 6059, 2018 WL 2183295, at *5 (N.D. Cal. May 11, 2018); *Gutierrez v. Wells Fargo Bank, N.A.*, No. 07 CV 05923, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) (finding reasonable rates for Bay Area attorneys of $475-$975 for partners and $300-$490 for associates). Even though rising market rates since 2015 should support and justify higher rates, the rates proffered here are still within the ranges considered and found reasonable nearly ten years ago. Given their experience, Plaintiffs' counsel's rates are reasonable, and they are in line with rates approved for attorneys with comparable experience in this District.

The number of hours Plaintiffs' counsel claim is likewise reasonable. Plaintiffs' counsel's records reflect 819.3 hours expended by professionals over more than four years of litigation. (Becvar Decl. ¶¶ 20, 23–27) (detailing the substantial work that went into moving for nationwide notice under Section 216(b), litigating multiple case issues, effectuating notice to potential members of the collective, engaging in discovery, and preparing for mediation).

Plaintiff's counsel seeks a fee award of $500,000.00, a slight negative multiplier of their $521,070.00 lodestar based on reasonable rates and hours spent in this litigation. The near-parity between the common fund award sought by counsel and their lodestar further supports the reasonableness of the fees requested.

### 4. Plaintiffs' Counsel's Out-of-Pocket Expenses Are Reasonable

Additionally, Plaintiffs' counsel have spent $36,289.70 in actual litigation expenses, including fees for FLSA notice, mediation fees, filing fees, costs of service of process, electronic research, and other reasonable litigation-related costs. (Becvar Decl. ¶ 28.) Plaintiffs' counsel also received an estimate from Simpluris that it will incur an additional $4,000.00 in future costs associated with administering the settlement. (*Id.* ¶ 29.) All these costs are necessary to prosecute

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

this action and would be passed on to a client in an hourly billing situation. (*Id.* ¶ 30.) Attorneys are entitled to be reimbursed for their out-of-pocket expenses incurred in creating a common fund for the benefit of a class so long as the submitted expenses are reasonable, necessary, and would typically be billed to paying clients. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008). Plaintiffs' counsel's request for reimbursement of $36,000.00 in out-of-pocket expenses is reasonable and should be approved.

### D.    A Service Award to the Named Plaintiff Is Reasonable

Service awards for representatives "are intended to compensate class representatives for work done on behalf of the class [and] to make up for financial and reputational risk undertaken in bringing the action" and are "fairly typical in class action cases." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). These awards are also typical in FLSA cases. *See, e.g., Jones v. Agilysys, Inc.*, No. C 12-03516 SBA, 2014 WL 2090034, at *3 (N.D. Cal. May 19, 2014). "In this District, a $5,000 incentive award is presumptively reasonable." *Villegas v. J.P. Morgan Chase & Co.*, No. C 09–0261 SBA, 2012 WL 3542187, at *6 (N.D. Cal. Aug. 14, 2012).

Named Plaintiff Sarah Silva played a crucial role in this litigation. (Becvar Decl. ¶ 31.) She filed and prosecuted this lawsuit in her own name, which remains a matter of public record, and sacrificed her time and reputation to prosecute this lawsuit on behalf of fellow employees of First Transit. (*Id.*) She reviewed and approved the complaint; met, conferred, and corresponded with Plaintiffs' counsel on a regular basis; gave sworn testimony; responded to written discovery requests; and provided invaluable information and assistance to counsel, without which they could not have achieved the significant monetary relief recovered. (*Id.*) Therefore, a separate service payment of $5,000.00 to the Named Plaintiff in addition to her share of the Settlement Fund is reasonable and warrants approval.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, the Settlement Agreement is a fair and reasonable resolution of a *bona fide* dispute and the requested attorney's fees and costs are reasonable. Plaintiffs respectfully request this Court approve the proposed Settlement Agreement, grant

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

1   reasonable attorneys' fees and costs to Plaintiffs' counsel in the requested amounts, grant Named

2   Plaintiff a service award, and enter the proposed Order granting the instant Motion its entirety.

3

4                                            Dated:  September 3, 2024

5                                            By: */s/ Teresa M. Becvar*
                                             Ryan F. Stephan
6                                            James B. Zouras
                                             David J. Cohen
7                                            Teresa M. Becvar
                                             STEPHAN ZOURAS, LLC
8

9                                            Mark R. Thierman
                                             Joshua D. Buck
10                                           THIERMAN BUCK LLP
11
                                             *Attorneys for Plaintiff and Members*
12                                           *of the Collective Action*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF THE PARTIES' FLSA SETTLEMENT**
**Case No. 4:20-cv-02285-JSW**

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com